UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

United States of America,

Plaintiff,

vs.                                    REPORT AND RECOMMENDATION

Calvin Doise Little,

Defendant.        Crim. No. 08-394 (DSD/RLE)

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge
pursuant to a general assignment, made in accordance with the provisions of Title 28
U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Suppress Evidence Obtained
as a Result of Search and Seizure.[1]   A Hearing on the Motion was conducted on
January 21, 2009, at which time, the Defendant appeared personally, and by Douglas

---

[1] At the close of the Hearing, the parties requested leave to submit post-Hearing
briefing on the suppression issue.  However, by letter dated January 29, 2009, see,
Docket No. 32, counsel for the Defendant advised that no additional briefing would
be submitted.  As a consequence, we took the Motion under advisement on January
29, 2009.  See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States,
476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th
Cir. 1995).

Olson, Assistant Federal Defender, and the Government appeared by William J. Otteson, Assistant United States Attorney.  For reasons which follow, we deny the Defendant's Motion to Suppress.

## II.  Factual and Procedural Background

In a one-Count Indictment, the Defendant is charged with the Sexual Abuse of a Minor, in violation of Title 18 U.S.C. §§1151, 1153, and 2243(a).  As pertinent to those charges, and to the Defendant's Motion to Suppress, the operative facts may be briefly summarized.[2]

At the time of the Hearing, the Government called Jonathan Richards ("Richards"), who is a police officer with the Red Lake Police Department, and an enrolled member of the Red Lake Band of Chippewa Indians, to testify.  According to Richards, he is familiar with the area in which the crime is alleged to have occurred,

---

[2]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

as his grandparents owned a home in that area since the mid-1970s, and his parents have lived in that same home since 2003.  As recounted by Richards, on July 12, 2008, at approximately 3:30 o'clock a.m., he was working police patrol, and had stopped at his parents' residence for a break.  As he was leaving his parents' home, Richards heard a female screaming from near the home of John Little ("Little"), which was across the street from the home of Richards' parents, in Redby, Minnesota.  He heard a female screaming "Get off me," and a male voice responding "stay still, do you like this?"  According to Richards, the male was using profanity.[3]

As related by Richards, there was no traffic on the street between his parents' home, and the site from which he was hearing the screaming, and there were no other noises.  Richards testified that he walked to an area between Little's residence, and a nearby bush.  As he approached quietly, he observed the Defendant having sexual intercourse with A.K.  According to Richards, he waited until he was quite close and then activated his flashlight.  When he did so, the Defendant got up and started to run. At the time of the Hearing, Richards drew a map of the area, and placed an "X" where

---

[3]On cross examination, and after reviewing his report, Richards testified that the Defendant had responded to the victim's demand that he get off of her, by stating "f**king be quiet, do you like this?"  Richards could tell that the female victim was crying.

he had observed the couple on the ground, on the left side of the bush, from the perspective of Little's home.  See, <u>Government Exhibit 1</u>.  Richards estimated that he was approximately five (5) feet from the couple when he first saw them.

Richards described the Defendant as wearing no pants or underwear, although he had the top of his body covered.  The Defendant's clothing was piled near to where the couple was lying.  When Richards announced his presence, the Defendant began to run and, although Richards identified himself, the Defendant kept running.  At that point, Richards deployed a taser gun, but the prongs missed the Defendant.  The Defendant started to run, clockwise, around Little's residence, with Richards in pursuit.  As related by Richards, the Defendant circled the residence three (3) times and, during the second rotation, he removed and threw his sweatshirt on the ground at the corner of Little's house, where, on the map he had drawn, Richards marked the spot with an "X," and the word "sweatshirt."  <u>Id.</u>  Richards then gave up the chase in order to assist the victim.

Richards testified that he knows John Little, who is the owner of the Little residence, who is the Defendant's grandfather, and who came out of the house in order to determine what was going on.  Richards stated that Little asked what was going on, and Richards directed him to telephone the police.  Little went back into the house,

and returned with a telephone that he handed to Richards, who telephoned for police assistance.  Elaine Little, who is the Defendant's grandmother, also stepped outside the house to ask what was going on, and when other officers arrived, Richards obtained verbal consent from Little to search Little's home for the Defendant.  Neither the Defendant, nor any evidence of a crime, were found in Little's home.  After Richards exited the residence, he noted that the Defendant's pile of clothes, and the discarded sweatshirt, were still on the ground in their separate locations.  At that point, Leonard Red Cloud ("Red Cloud"), who is a Criminal Investigator with the Red Lake Police Department, came upon the scene and gathered the evidence, without objection from Little.  As recounted by Richards, since the time of the incident, neither the Defendant, nor any member of the Little family, has asked for the return of the Defendant's clothing, which have since been sent to the Minnesota Bureau of Criminal Apprehension for DNA testing.

On cross examination, Richards testified that, when he heard the screaming, after leaving his parents' house, he went to his squad and radioed the dispatcher in order to report that something was going on at the Little residence.  He testified that there was no light in the yard of the Little home, so he grabbed his flashlight. Richards related that he walked between Little's home and the bush and, when he

shined the light, he was approximately five (5) feet from the couple. Richards again testified that he saw the Defendant having sexual intercourse with the female, and that, when the Defendant looked back at him over the Defendant's right shoulder, Richards recognized him as the Defendant Calvin Little. According to Richards, he saw the act of penetration. Once Richards shown his flashlight on the Defendant, the Defendant stood up and ran. Richards stated that, at that time, he did not recognize the female, but that she was crying.

Upon questioning, Richards stated that he did not precisely recall what items of clothing were collected, as that was the responsibility of Red Cloud. He also testified that Little had informed him that the Defendant was staying at the residence, and that was the reason for obtaining consent, from Little, to search Little's home for the Defendant. Richards admitted that the clothes were seized without a Warrant. Apparently, a wallet was found amongst the Defendant's clothing, and the contents of the wallet was inventoried by Richards. What the specific pieces of clothing were, however, was not known to Richards, as Red Cloud collected the evidence.

On redirect, Richards stated that Little had not told him that the Defendant was residing at the Little home, but rather, that he had related, before the search, that the Defendant was not in the house.

III.  Discussion

While the Defendant moves to suppress the clothing, that was seized from Little's yard, he has not articulated any basis upon which to do so, but we conclude that the Motion to Suppress must be denied on at least two (2) separate grounds.  First, we find the evidence to be admissible under the "plain view doctrine," and second, we conclude that the Defendant has failed to establish that he held any legitimate expectation of privacy in the evidence that was seized, given his abandonment of that property.

A.  The "Plain View Doctrine."  "Under the plain view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003), cert. denied, 541 U.S. 968 (2004), quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); see also, United States v. Murphy, 261 F.3d 741, 743 (8th Cir. 2001)("A law enforcement officer is permitted 'to seize evidence without a warrant when the initial intrusion is lawful, the discovery of the evidence is inadvertent, and the incriminating nature of the evidence is immediately apparent."), quoting United States v. Raines, 243 F.3d 419, 422 (8th Cir. 2001), cert. denied, 532

U.S. 1073 (2001). "Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant." United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008), cert. denied, --- U.S. ---, 128 S.Ct. 2919 (2008), citing Horton v. California, 496 U.S. 128, 133 (1990).

"'The "immediately apparent" requirement means that officers must have "probable cause to associate the property with criminal activity."'" United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997), quoting United States v. Hatten, 68 F.3d 257, 261 (8th cir. 1995), cert. denied, 516 U.S. 1150 (1996), quoting, in turn, United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). "Probable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'" Id., quoting United States v. Garner, supra at 62, quoting, in turn, Texas v. Brown, 460 U.S. 730, 742 (1983).

Here, there can be no doubt that Richards was properly in Little's yard when he was investigating what proved to be an apparent crime in progress, given the screaming, which must have sounded as pleas for help, or at least for assistance. In addition, Richards was not searching for evidence, but came upon the evidence

inadvertently -- that is, he entered Little's property for reasons other than to search for evidence that he previously thought would be found there.  Lastly, there can be no doubt that, upon finding the Defendant's clothes at the scene of the charged offense, as well as his sweatshirt, which was discarded during the Defendant's flight from apprehension, a reasonably cautious person would be warranted in believing that the evidence would be useful in proving the charges against the Defendant.

The fact that Richards used a flashlight to illuminate the unlawful conduct, as well as the incriminating evidence, is not of constitutional importance.  See, United States v. Lee, 274 U.S. 559, 563 (1927)("Such use of a searchlight is comparable to the use of a marine glass or a field glass," and "is not prohibited by the Constitution."); United States v. Hatten, supra at 261 ("It does not matter that Officer Pfeffer used a flashlight."), citing United States .v Garner, supra at 62 n. 2; United States v. Trower, 285 Fed.Appx. 321, 324 (8th Cir. 2008)("We attach no importance to the fact that [Officer] Rorebeck used a flashlight."), citing United States v. Dunn, 480 U.S. 294, 305 (1987).  In view of the totality of the Record presented, we find that the evidence seized from Little's yard is admissible under the plain view doctrine, and the Defendant's Motion to Suppress should be denied on that ground.

B.    The Abandoned Property Doctrine.  Even if the evidence were not admissible under the plain view doctrine, we find that the Defendant had abandoned his clothing, which law enforcement seized, and that he relinquished any reasonable expectation of privacy that he would otherwise have had in that evidence.

"When moving to suppress evidence on the basis of an alleged unreasonable search, the defendant 'has the burden of showing a legitimate expectation of privacy in the area searched.'"  United States v. James, 534 F.3d 868, 872 (8th Cir. 2008), quoting United States v. Pierson, 219 F.3d 803, 806 (8th Cir. 2000).  "Whether a defendant has a constitutionally protected expectation of privacy involves a two-part inquiry" -- the defendant must show that (1) he 'has a reasonable expectation of privacy in the areas searched or the items seized,' and (2) 'society is prepared to accept the expectation of privacy as objectively reasonable.'"  Id. at 872-73, quoting United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993).  Here, the Defendant offers no showing that he held any expectation of privacy in his grandfather's yard -- a place open to the public -- and "[t]he touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'"  United States v. Hayes, 120 F.3d 739, 743 (8th Cir. 1997).  For example, the Defendant does not so much as intimate that he lived at his grandfather's house, or that his grandfather

granted him the right to store his property, including his clothes, in that yard. Moreover, the officers on the scene collected the property that the Defendant had abandoned, without any objection from Little, who had already granted the officers consent to search his home.

Moreover, "[a]bandoned property is outside the scope of fourth amendment protection because its owner has forfeited any expectation of privacy in it." United States v. Thomas, 451 F.3d 543, 545-46 (8th Cir. 2006), cert. denied, 549 U.S. 1144 (2007), citing United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997), cert. denied, 522 U.S. 1061 (1998).  As a consequence, "[a] warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." United States v. James, supra at 873, quoting United States v. Tugwell, supra at 602, citing, in turn, United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994), cert. denied, 513 U.S. 1099 (1995).  "The issue 'is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished h[is] reasonable expectation of privacy so that the search and seizure is valid.'" Id., quoting United States v. Tugwell, supra at 602, quoting, in turn, United States v. Hoey, supra at 892-93.  "Whether a person intends to abandon property may be inferred from words

- 11 -

spoken, acts done and other objective facts, and all relevant circumstances at the time of the alleged abandonment should be considered." United States v. Whaley, 2007 WL 2110507 at *4 (E.D. Mo., July 16, 2007), citing United States v. Hoey, supra at 892.

"Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." United States v. James, supra at 873, quoting United States v. Tugwell, supra at 602, citing United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993), cert. denied, 510 U.S. 913 (1993). "This determination is to be made in light of the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property." Id., quoting United States v. Tugwell, supra at 602, quoting United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986). Here, the evidence seized was abandoned during the Defendant's successful flight from apprehension. While there was nothing expressed, which reflects a particularized denial, by the Defendant, that the property was his, there can be no doubt that the Defendant relinquished his ownership of the property. Richards' testimony remains unrebutted, that, to date, no one has claimed ownership in the evidence that was seized -- neither the Defendant, nor any of the Little family members -- which plainly evinces

his relinquishment of any ownership in that property.  See, e.g., <u>United States v. Whaley</u>, supra at *4 ("Here there is no question that defendant physically relinquished the gun when he dropped it out the window," as "[h]e made no effort to stop and claim ownership of the gun."); <u>United States v. Mosby</u>, 2006 WL 3359331 at *2 (D. Minn., October 25, 2006) (concluding that relinquishment of property occurred when the defendant threw "a metallic-colored object under a car" -- which later proved to be a revolver -- "and made no attempt to recover the item at any point.").

Given this Record in its totality, we find and conclude that the investigating officers were fully justified in concluding that the Defendant had abandoned any ownership in the clothing he had shed in Little's yard.  The Defendant left the area -- apparently in the nude -- and, to date, he has not claimed any ownership interest in those articles of clothing.  Therefore, having abandoned any ownership interest, the Defendant "relinquished his reasonable expectation of privacy" over the clothing that was collected, at the site of the alleged sexual assault in Little's yard, and forfeited any protection, under the Fourth Amendment, that would otherwise have attached to that property.  See, <u>United States v. Richardson</u>, 537 F.3d 951, 957 (8th Cir. 2008), pet. for cert. filed (U.S., December 30, 2008).  As a result, there is no responsible basis on which to suppress law enforcement's seizure of the abandoned articles of clothing that

- 13 -

they collected in Little's yard in the early morning hours of July 12, 2008, and the Defendant's Motion to Suppress should be denied.

NOW, THEREFORE, It is –

ORDERED:

That the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 27] be denied.

Dated:  February 3, 2009            *s/Raymond L. Erickson*
                                    Raymond L. Erickson
                                    CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 23, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

- 14 -

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 23, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.